**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LEVON ARAKELYAN,

        Petitioner,

   v.

MARKWAYNE MULLIN, et al.,

        Respondents.

No. 5:26-cv-2433 DSR

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS AND ORDERING IMMEDIATE RELEASE**

On May 7, 2026, Levon Arakelyan ("Petitioner"), a noncitizen who has been detained in Immigration and Customs Enforcement ("ICE") custody since March 11, 2026, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") challenging his ongoing detention as violative of, inter alia, his right to due process. See Doc. No. 1.  The Petition names as Respondents the Secretary of Homeland Security, the Acting Director of ICE, the Acting Attorney General of the United States, the Director of the San Bernardino Field Office of ICE's Enforcement and Removal Operations division, and the Warden of the Desert View ICE Processing Center where Petitioner is currently detained, each in his or her official capacity (collectively "Respondents").

Concurrently with the filing of his Petition, Petitioner voluntarily consented under 28 U.S.C. § 636 to have a Magistrate Judge conduct all further proceedings in this case, including trial and the entry of judgment.  See Doc. No. 4.  The case became fully consented three days later pursuant to the United States Attorney's

Office's General Consent to Disposition by Magistrate Judge in Immigration Habeas Cases.  See General Order 26-05 at Ex. "A" (Doc. No. 6); see also Doc. No. 8.

For the reasons set forth below, the Court **GRANTS** the Petition and issues a Writ of Habeas Corpus ordering Petitioner's immediate release from immigration custody.

## 1.   FACTUAL AND PROCEDURAL BACKGROUND

The following facts, drawn from the Petition, are uncontested in Respondents' Answer.  Petitioner, a native and citizen of Armenia, presented himself at the port of entry near San Ysidro, California on December 23, 2022, when he expressed a fear of returning to Armenia.  See Pet. at ¶¶ 2, 17.  He was detained and then released from immigration custody on humanitarian parole pursuant to § 212(d)(5) of the Immigration and Nationality Act ("INA") (8 U.S.C. § 1182(d)(5)(A)) and 8 C.F.R. § 212.5(b).  Id. at ¶ 18.  On March 10, 2023, he was placed into removal proceedings and ordered to appear before an Immigration Judge.  Id. at ¶ 19.

While on parole and living freely in the United States, Petitioner reported regularly to immigration authorities as required.  Id. at ¶¶ 3, 21.  Years after his release on parole, on March 11, 2026, he was re-detained by immigration authorities outside his home.  Id. at ¶ 22.  He is currently detained at the Desert View Annex in Adelanto, California.  Id. at ¶ 1.  Petitioner did not receive "a termination of his parole status," a statement of the reasons for the termination, or a bond determination hearing before an Immigration Judge.  Id. at ¶¶ 24, 30.

Petitioner filed his habeas petition on May 7, 2026.  Pursuant to General Order 26-05, Respondents filed their Answer to the Petition on May 14, 2026 (Doc. No. 9), and Petitioner filed his Reply on May 18, 2026.  See Traverse (Doc. No. 10).

## 2.   CLAIMS AND RELIEF SOUGHT

Petitioner argues that his detention violates the INA, the accompanying regulations, and his right to due process.  Id. at ¶ 6.  He also contends that his only

violation of law is "a single infraction for trespass which does not constitute a changed circumstance disqualifying him from asylum or a basis for the termination of parole." Id. at ¶ 23.  Petitioner's requested relief includes a declaration that termination of his parole and re-detention is unlawful, an order that Petitioner may not be re-detained absent proper notice, and further relief that the Court deems proper.  Id. at p. 7, prayer ¶¶ 2-5. In their Answer, Respondents state that "[t]o the extent Petitioner is entitled to any relief via his Petition, it is not the extraordinary relief of immediate relief [sic][1] but instead a bond hearing."  See Doc. No. 9 at 2:5-6.  While Respondents decline to provide an opposing argument with respect to providing Petitioner a bond hearing, they do argue that his trespass infraction constitutes changed circumstances which allows Respondents to detain Petitioner.  See Answer (Doc. No. 9) at p. 2:9-11.

**3.      LEGAL STANDARD AND THE EXHAUSTION REQUIREMENT**

Relief in the form of a writ of habeas corpus may be granted to a person in custody under the authority of the United States if the petitioner can show that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]"  28 U.S.C. § 2241(c)(3).  The writ of habeas corpus is "available to every individual detained within the United States."  Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004).  Although Congress has barred courts from reviewing certain discretionary decisions concerning detention or release of noncitizens subject to removal proceedings, see 8 U.S.C. §§ 1226(e), 1252(g), federal courts retain jurisdiction to "review related 'constitutional claims or questions of law.'"  Martinez v. Clark, 36 F.4th 1219, 1224 (9th Cir. 2022) (quoting Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011)), vacated on other grounds by ___ U.S. ___, 144 S. Ct. 1339, 218 L.Ed.2d 418 (2024).  Petitioner makes such reviewable claims here, and Respondents do not contest the point.

---

[1]      The Court presumes that Respondents mean to contest immediate "release," not "relief."

3

Habeas petitioners seeking relief under Section 28 U.S.C. § 2241 generally must first exhaust all available administrative remedies.  See Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012).  However, because this requirement is "prudential" and not a "jurisdictional prerequisite," it is subject to waiver.  Id. at 1045-46; Arango Marquez v. INS, 346 F.3d 892, 897 (9th Cir. 2003) ("[T]he district court properly waived exhaustion, because the exhaustion requirement in § 2241 cases is prudential, rather than jurisdictional.").  Here, Respondents do not address the exhaustion requirement in their Answer.  See generally Doc. No. 6.  Thus, the Court finds that any failure by Petitioner to exhaust administrative remedies in this matter is not a bar to this Petition.  The Court therefore proceeds to consider the merits of the Petition.

## 4.    DISCUSSION

### A.    Petitioner's Re-detention Violates Due Process

For his third and fourth claims for relief, Petitioner challenges his re-detention as violative of his rights to procedural due process under the Fifth Amendment.  See Pet. at ¶¶ 37-49.  Respondents do not address Petitioner's due process claims in their Answer, arguing only that the appropriate remedy, if necessary, would be a bond hearing, not immediate release.  See generally Answer.  Consistent with precedent, courts in this Circuit have regarded such silence as a concession.  See e.g., Soleimani v. Larose, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth Amendment due process claim); Singh v. Chiang, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession).  Nevertheless, the Court independently evaluates the merits of Petitioner's due process challenge.  Upon such evaluation, the Court concludes that his re-detention violates the Due Process Clause.

4

The Due Process Clause prohibits deprivations of life, liberty, and property without due process of law.  See U.S. Const. amend. V.  There is no question that these protections extend to noncitizens present in the United States.  See, e.g., Trump v. J.G.G., 604 U.S. 670, 673 (2025) (per curiam) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings." (internal quotation marks omitted)); Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); Hussain v. Rosen, 985 F.3d 634, 642 (9th Cir. 2021) ("The Fifth Amendment entitles aliens to due process of law in deportation proceedings." (internal quotation marks and brackets omitted)).  Indeed, "the government's discretion to incarcerate noncitizens is always constrained by the requirements of due process . . . ."  Hernandez v. Sessions, 872 F.3d 976, 981 (9th Cir. 2017).  "In the context of immigration detention, it is well-settled that 'due process requires adequate procedural protections to ensure that the government's asserted justification for physical confinement outweighs the individual's constitutionally protected interest in avoiding physical restraint.'"  Id. at 990 (quoting Singh, 638 F.3d at 1203).

"A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections."  Brewster v. Bd. of Ed., 149 F.3d 971, 982 (9th Cir.1998).  The first step is to determine whether the individual possesses a liberty or property interest that triggers due process protections.  Board of Regents v. Roth, 408 U.S. 564, 569 (1972).  If such a constitutionally protected interest exists, the second step applies a three-step balancing test described in Mathews v. Eldridge to assess what procedural safeguards are required.  Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976).  Only after establishing a constitutionally protected interest does the analysis proceed to the second step.

### i.      Petitioner Has a Constitutionally Protected Liberty Interest In His Immigration Parole

It is uncontroverted that Petitioner initially presented himself at the port of entry in December 2022, was detained, and then released into the United States on parole pursuant to INA § 212(d)(5)(A) (8 U.S.C. § 1182(d)(5)(A)).  See Pet. at ¶¶ 2, 17-18.[2]  It is also undisputed that since he was released, Petitioner "reported regularly to immigration authorities as required," and over the ensuing years "resided in the United States with the expectation that he would not be subject to detention."  Id. at ¶¶ 3, 21.

Once Petitioner was released from immigration custody on parole, he acquired "a protected liberty interest in remaining out of custody."  Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1030 (N.D. Cal. 2025) ("The Supreme Court has recognized this protected liberty interest even though the released individual is subject to extensive conditions of release, like reporting regularly to a parole officer, not using alcohol, and not traveling out of the country.").  Indeed, "the government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release."  Pinchi, 792 F. Supp. 3d at 1032 (internal quotation marks, brackets, and ellipses omitted).  This "liberty is valuable and must be seen as within the protection of the [Due Process Clause]."  Morrissey v. Brewer, 408 U.S. 471, 482 (1972).

Deprivation of that protected interest required due process of law.  The Court now turns to whether Respondents afforded Petitioner such due process.

---

[2] The fact that Petitioner was released from custody necessarily means that he demonstrated to the satisfaction of immigration officials that his release would not pose a danger to property or persons and that he was likely to appear for any future proceeding.  See Fernandez Lopez v. Wofford, No. 1:25-cv-1226-KES-SKO, 2025 WL 2959319, at *2 (E.D. Cal. Oct. 17, 2025).

### ii.    The Mathews Balancing Test

To determine whether detention violates procedural due process, courts frequently apply the three-part test set forth in Mathews v. Eldridge.  See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206 (9th Cir. 2022) (collecting cases and applying the Mathews test to a constitutional challenge to detention pursuant to 8 U.S.C. § 1226(a)).  Under Mathews, courts balance the following three factors:  (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."  Mathews, 424 U.S. at 335; see also id. at 332 ("Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment.").  Here, the balance favors Petitioner.

### a.    Private Interest

Petitioner's private interest here is substantial.  "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."  United States v. Salerno, 481 U.S. 739, 755 (1987).  "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process Clause] protects."  Id. at 690.  Petitioner has a considerable liberty interest in maintaining his life out of custody via Section 212(d)(5) parole.  In the multiple years between the time immigration officials released Petitioner on parole and when they re-detained him outside his home in March of this year, Petitioner lived freely in the United States, during which time he applied for asylum, reported regularly to immigration authorities, and generally formed an expectation that he would not be subject to

7

detention.  See Pet. at ¶¶ 3, 21.  In consideration of the guiding principles and relevant authority, the Court finds that Petitioner's interest in remaining at liberty is substantial.

### b.      Risk of Erroneous Deprivation

Regarding the second Mathews factor, the risk of erroneous deprivation here is significant because Petitioner has not been afforded any opportunity to contest the revocation of his parole.  In fact, he has not even been told the reason for his detention.  Id. at ¶ 24.  Civil immigration detention is "nonpunitive in purpose and effect" and is permissible only to reduce the risk of flight or danger to the community.  Zadvydas, 533 U.S. at 690.  "In releasing Petitioner on humanitarian or significant public benefit parole," the Government "necessarily found Petitioner did not pose a significant flight risk or danger to the community." Medrano-Rocha v. Santacruz, No. CV 26-00404-KK-AGRX, 2026 WL 411355 at *4 (C.D. Cal. Jan. 23, 2026) (citing 8 C.F.R. § 212.5(b)).

Respondents argue now in their Answer to this Petition (though apparently not at the time they re-detained Petitioner) that "Petitioner's admitted infraction for trespass constitutes changed circumstances which allow Respondents to detain him."  Answer at 2:9-11.  That may, or may not, be the case.  That question, however, is the entire point of requiring notice and an opportunity to be heard before Petitioner was deprived of his substantial liberty interest in his parole release and subjected to months of detention.  A pre-deprivation hearing would require the government to produce its evidence of changed circumstances and give Petitioner an opportunity to challenge that evidence.  This is a significant procedural safeguard.  Without written notice, in compliance with 8 C.F.R. § 212.5(e)(2)(i), and a meaningful, individualized hearing, "the risk of an erroneous deprivation of liberty is high because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his]

8

detention."  Fernandez v. Semaia, No. 5:25-CV-03412-SPG-MBK, 2026 WL 136229 at *5 (C.D. Cal. Jan. 13, 2026).  As one court has reasoned:

> ICE revoked Petitioner's release at a scheduled check-in based solely on internal ATD entries, without prior written notice, without specifying the alleged violations in advance, and without any meaningful opportunity to be heard.  [Citations omitted].  Proceeding on untested contractor and agency records, with no mechanism for explanation or correction, creates a significant risk of error.  Moreover, Petitioner had previously been found suitable for humanitarian parole, which requires that a noncitizen "present neither a security risk nor a risk of absconding[.]"  [Citation omitted].  A brief pre-deprivation hearing would have substantial value in testing both the factual and legal basis for re-detention.

Asad v. Noem, No. 26-cv-620, 2026 WL 775628, at *3 (W.D. Wash. Mar. 19, 2026). Thus, the second Mathews factor similarly favors Petitioner in this case.

### c.      Government Interest

Regarding the third Mathews factor, Respondents do not assert any countervailing interest (because they did not address the due process claim at all). Nevertheless, "[o]f course, the government and the public have a significant interest in 'enforcement of the United States's immigration laws,' [record citation omitted], but that includes an interest in 'upholding procedural protections against unlawful detention.'"  Nguyen v. Noem, 817 F. Supp. 3d 889, 900 (C.D. Cal. 2025) (second internal quote from Pinchi, 792 F.Supp.3d at 1037).  Thus, the governmental interest in this prong of the Mathews analysis, however, is not an interest merely in being able to revoke a non-citizen's parole, but rather the interest in summarily revoking that status without any notice or opportunity to be

heard.  Courts have routinely recognized that such interest is "low."  See, e.g., Gourav v. Janecka, No. EDCV 26-1253 MWF (DSR), 2026 WL 966568, at *3 (C.D. Cal. Apr. 7, 2026); Fernandez Lopez v. Wofford, No. 1:25-CV-01226-KES-SKO (HC), 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025); Meneses v. Santacruz, 811 F. Supp. 3d 1158, 1164 (C.D. Cal. 2025); see also Cornejo v. Andrews, No. 1:25-CV-02062 JLT HBK, 2026 WL 237748, at *10 (E.D. Cal. Jan. 29, 2026) (the government interests in protecting the public from harm and preventing the noncitizen's flight "are adequately protected by having a neutral adjudicator evaluate whether a noncitizen presents these risks."); Telenchana v. Hermosillo, No. 2:26-cv-00363-GJL, 2026 WL 696806, at *10 (W.D. Wash. Mar. 12, 2026) ("[T]he governments interest in [petitioner's] re-detention without adequate process is minimal or non-existent."); Chel v. Larose, No. 26CV1114-LL-BLM, 2026 WL 926902, at *3 (S.D. Cal. Apr. 6, 2026) ("[T]he government's interest in detaining Petitioner without notice, reasoning, and a hearing is low.").  Thus, the third Mathews factor also favors Petitioner.

Therefore, the Mathews balance tips decidedly in favor of Petitioner on this record.  The Court thus concludes that Petitioner's re-detention on March 11, 2026, occasioned by the de facto revocation of his immigration parole without notice or a pre-deprivation hearing, violated Petitioner's procedural due process rights.  See, e.g., Mourey v. Bowen, 2026 WL 467567, at *4 (C.D. Cal. Jan. 31, 2026) ("Pursuant to the holding in Mathews, Petitioner should have been afforded a pre-detention hearing."), report and recommendation adopted, 2026 WL 464788 (C.D. Cal. Feb. 17, 2026); Fernandez Lopez, 2025 WL 2959319, at *6 ("On balance, the Mathews factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); Maldonado Vazquez v. Feeley, 805 F. Supp. 3d 1112, 1148 (D. Nev. 2025) ("Where, as here, a noncitizen is detained after having been ordered released, without any process provided by the

Government for challenging his continued detention, detention becomes arbitrary and violates due process.").

### iii.    A Post-Deprivation Hearing is Insufficient

As noted above, Respondents failed to address Petitioner's due process claims in their Answer.  Rather, they only seek to limit the scope of the remedy Petitioner receives for such deprivation, arguing that "to the extent Petitioner would be entitled to any remedy, at most it would be ordering a bond hearing to be held before an Immigration Judge under Section 1226(a)."  Answer at 2:18-20.

It appears then that Respondents argue that Petitioner was only entitled to a post-deprivation hearing.  The Court rejects such contention for two reasons.  First, there is no indication in the record that Respondents provided Petitioner a post-deprivation hearing.  Rather, they assert only that "at most" the Court should now order that he receive one, months after his parole was revoked and he was re-detained.  Even if, hypothetically, post-deprivation process would satisfy the Constitution in these circumstances, Petitioner has not even received that.

Second, the Court finds that Petitioner was entitled to due process protections before his parole was improperly revoked, and he was improperly re-detained.  "Due process generally includes an opportunity for some type of hearing before the deprivation of a protected property interest."  Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1317 (9th Cir. 1989) (emphasis added) (citing Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 19, (1978); Sinaloa Lake Owners Ass'n v. City of Simi Valley, 864 F.2d 1475, 1481-82 (9th Cir.1989)).  While Courts have recognized that a post-deprivation hearing can sometimes satisfy the requirements of due process, that is the exception, not the rule.  See Soranno's Gasco, 874 F.3d at 1317 (noting that there are "exceptions to the pre-deprivation hearing requirement" permitting post-deprivation procedures such as "the necessity of quick action by the State or the impracticability of providing any meaningful predeprivation process").  Indeed, the Supreme Court has held "[w]e tolerate some

exceptions to the general rule requiring pre-deprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." United States v. James Daniel Good Real Prop., 510 U.S. 43, 53 (1993) (internal quotations and citations omitted); see also Shinault v. Hawks, 782 F.3d 1053, 1058 (9th Cir. 2015) ("post-deprivation process can suffice 'in limited cases' when prompt action is required, an important government interest is involved, and there is substantial assurance that the deprivation is not baseless or unwarranted.").

Here, Respondents have not offered any "extraordinary situations" creating a "necessity of quick action" or any "impracticability of providing any meaningful predeprivation process" to justify reliance on post-deprivation process for revocation of Petitioner's parole.  It would not have been "impracticable" for immigration authorities to have provided Petitioner with a meaningful pre-deprivation process before re-detaining him as he came out of his home.  It is undisputed that throughout his time released on parole, Petitioner reported regularly to immigration authorities as required.  See Pet. at ¶ 3.  On this record, the circumstances here do not qualify for the exception permitting post-deprivation process.

**B.     Immediate Release is the Appropriate Remedy**

Given this violation of Petitioners due process rights, the Court concludes that "Petitioner's release is necessary to return him to the status quo." Nazarian v. Noem, No. 5:25-cv-2694-KK-ADSx, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025). The status quo is "the last uncontested status which preceded the pending controversy." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1210 (9th Cir. 2000) (internal quotation marks omitted).  The last uncontested status here is Petitioner's prior release on parole before his current re-detention.  See Nazarian, 2025 WL 3236209, at *7 ("The last uncontested status in this case is Petitioner's release on his second OSUP before his current re-detention.").  "Accordingly,

12

Petitioner's release from custody is the appropriate remedy."  Id.; see Esmail v. Noem, No. 2:25-cv-8325-WLH-RAO, 2025 WL 3030590, at *6 (C.D. Cal. Sept. 12, 2025) ("Providing Petitioner an interview ex post facto, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process. The fact that he was not given an interview renders his detention unlawful in the first place, necessitating his release.").

Restoring Petitioner to the status quo also means release under the same parole conditions that were in place before the unconstitutional deprivation of that parole.  For the same reason that Respondents may not revoke Petitioner's parole without affording him due process, they also may not change the conditions of that parole without affording Petitioner due process.  Return to the status quo similarly means return to Petitioner any personal property and documents seized from him at the time of his detention.

Finally, Petitioner requests in the Petition an "Order that [he] may not be re-detained absent proper notice of the reasons that form the basis for revocation of parole."  Pet. at ECF p. 8, lns. 16-17 (prayer ¶ 3).  Though given the opportunity to do so in their Answer, Respondents do not address that issue at all.  The Court concludes that due process requires notice and a pre-deprivation hearing before Petitioner may be re-detained.  See Perez Bueno v. Janecka, No. 5:25-CV-03376-CAS-BFM, 2026 WL 309934, at *4 (C.D. Cal. Feb. 5, 2026) (ordering that the petitioner be released from immigration detention and that he not be re-detained without a pre-deprivation hearing); Mourey, 2026 WL 467567, at *6 ("If the Government seeks to re-detain Petitioner, he must be provided some kind of hearing before the state deprives him of his liberty.  Further, such hearing must be before a neutral arbiter in which the Government bears the burden of providing by clear and convincing evidence that Petitioner is a flight risk or danger to the community." (internal quotation marks, brackets, and citation omitted)).  Habeas

13

relief is not limited to "discharge of the applicant from physical custody.  Its mandate is broad with respect to the relief that may be granted." Carafas v. LaVallee, 391 U.S. 234, 239 (1968). Title 28 U.S.C. § 2243 expressly provides that "[t]he court shall . . . dispose of the matter as law and justice require."

A permanent injunction may be entered, at the discretion of the District Court, where a petitioner shows "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391, (2006).  The Court finds Petitioner has made such a showing here.  First, Petitioner has suffered an irreparable injury by being re-detained without due process of law, and would again if Respondents repeat such conduct.  There is no indication that Respondents' well-publicized efforts to detain non-citizens no longer pose a threat to Petitioner of a repeat of the same deficient re-detention as occurred in March of this year.  Second, legal remedies such as damages would be inadequate to cure the unconstitutional loss of his liberty while he is in detention awaiting court action on another habeas petition again challenging the deprivation of his due process rights.  And finally, the balance of hardships and public interest in merely requiring Respondents to provide basic due process in the event they again seek to re-detain Petitioner, versus forcing Petitioner again to suffer detention and sue to win his release, favor the imposition of a limited injunction against future re-detention without notice and a pre-deprivation hearing.  Thus, a permanent injunction prohibiting Respondents from repeating the same unconstitutional re-detention of Petitioner that necessitated this habeas case is appropriate.

**C.      Petitioner's Remaining Claims and Requests for Relief**

Because the Court concludes that Petitioner is entitled to release on due-process grounds, it is unnecessary to reach his alternative arguments, including those concerning violations of administrative regulations covering parole.  See generally Pet. at pp. 5-6.  The Court notes that Petitioner also requested an award of reasonable attorney's fees and costs.  Id. at p. 8, prayer ¶ 4.  The Court will consider requests for costs and attorney's fees upon compliance with Local Rules 54-2 (costs) and 54- 7 (attorney's fees).

**5.      CONCLUSION**

Petitioner is presently in custody of Respondents in violation of the Constitution or laws or treaties of the United States; thus, a Writ of Habeas Corpus should issue pursuant to 28 U.S.C. § 2241 compelling his immediate release.

**IT IS THEREFORE ORDERED** that:

1.  The Petition for Writ of Habeas Corpus is **GRANTED**.

2.  Respondents shall immediately release Petitioner **LEVON ARAKELYAN (A-246-313-440)** from custody, reinstate his parole under the same conditions that were in place before his re-detention on March 11, 2026, and return to him any personal property and documents seized from him at the time of his detention.

3.  Respondents shall also provide Petitioner with a copy of this Order at or near the time of release.

4.  Within two days of the date of this Order, Respondents shall file with the Court a status report confirming Petitioner's release and return of any personal property and documents.

5.  Respondents are enjoined from re-detaining Petitioner without first providing him with (a) written notice that complies with 8 C.F.R. § 212.5(e)(2)(i), and (b) an opportunity to be heard on the reasons for the proposed revocation of his immigration parole.

15

6. The Court will issue Judgment consistent with this Order.  Any fee motion must be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412, and this Court's Local Rules.  The Court retains jurisdiction to adjudicate any collateral enforcement issues.

**IT IS SO ORDERED.**

DATED: July 13, 2026

_____
HON. DANIEL S. ROBERTS
UNITED STATES MAGISTRATE JUDGE